# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2283

_____

Arch Bradley,                                              *
                                                          *
          Plaintiff-Appellant,         *
                                                          *
    v.                                         *
                                                          *   Appeal from the United States
Larry K. James, individually                              *   District Court for the
and in his official capacity as                           *   Eastern District of Arkansas.
an employee of the University                             *
of Central Arkansas; University of                        *
Central Arkansas,                                         *
                                                          *
          Defendants-Appellees.        *

_____

Submitted: November 16, 2006
Filed: March 2, 2007

_____

Before BYE, BOWMAN and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

After being fired by the University of Central Arkansas Police Department (UCAPD), Captain Arch Bradley filed suit, alleging age discrimination, Fourteenth Amendment violations, First Amendment violations under 42 U.S.C. § 1983, and state law. The district court[1] initially granted defendants summary judgment without

_____

[1] The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

opposition on all but the § 1983 First Amendment claim.  It later granted defendants summary judgment on the § 1983 claim, filed against UCAPD Chief Larry James in his official and individual capacities. Bradley appeals the latter decision.  We affirm.

On Friday, February 6, 2004, police at the UCAPD received a call reporting a man with a gun in Hughes Hall, a student dormitory.  Bradley, the highest-ranking officer on duty, remained at the UCAPD station directly across the street from Hughes Hall while six UCAPD officers and a group of Conway Police Department officers responded.

Minutes later, one resident of Hughes Hall telephoned his father to tell him police were running through the building with automatic weapons.  The father in turn called James at home, asking what was going on.  James called the police station, spoke to Bradley, and decided to come in.  When James arrived on the scene, the situation had been resolved – two students had been firing BB pistols at each other and had been found and arrested.  The incident was over very quickly – the call had come in at 9:32 p.m., and officers were writing their reports by 10:17 p.m.  James asked Bradley why he had not gone over to Hughes Hall.  Bradley told him he had too much paperwork to do, and added that if James had asked him to go, he would have immediately done so.  James orally made his displeasure clear to Bradley and others over Bradley's not responding to the call himself.

James asked the UCAPD's number-two officer, Major Glen Stacks, to conduct an investigation of the incident.  Stacks met with Bradley to discuss the incident, and before he could say anything, Bradley told him James had arrived on the scene intoxicated and had disrupted the investigation.  Bradley also told Stacks he had tried to call University of Central Arkansas (UCA) acting general counsel Jack Gillean the day before about the matter, but did not get in touch with him.

Stacks told James and Steve Wood, UCA's vice president for human resources, about Bradley's allegation. Stacks and Wood met with Bradley, and Bradley repeated his allegation that James had been intoxicated the night of the Hughes Hall incident and had interfered with the investigation.

On February 27, 2004, Wood sent a letter to Bradley stating, "Your inaction on February 6th and your unsubstantiated comments about Chief James are both terminable offenses." The letter offered Bradley the choice to retire or be fired. Bradley did not respond. On March 16, James sent Bradley a letter firing him for "deliberate or gross neglect of duty" during the Hughes Hall incident. Bradley's accusations that James had been intoxicated during the Hughes Hall incident were not referenced in the letter.

Bradley filed suit. The district court granted summary judgment on the First Amendment retaliation claim against James in his official and individual capacities. This appeal followed.

This court reviews a grant of summary judgment *de novo.* The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Even assuming Bradley was fired because of his allegations against James, and that his allegations were a matter of public concern, he cannot prevail. This case is controlled by the Supreme Court's decision in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), decided in May 2006, after the March 2006 decision of the district court.

Garcetti applies the two-part Pickering test to determine whether a public employee's speech should receive constitutional protection. See Pickering v. Bd. of

Educ., 391 U.S. 563, 568 (1968). First, did the employee speak as a citizen on a matter of public concern? If the answer to that question is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.[2]

We cannot find Bradley spoke as a citizen. Garcetti's test for whether a person spoke as a citizen or as a public employee comes down to whether the speech was made "pursuant to official responsibilities." 126 S. Ct. at 1961. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. at 1960; see also McGee v. Pub. Water Supply, Dist. #2 of Jefferson County, Mo., 471 F.3d 918, 921 (8th Cir. 2006).

As a police officer, Bradley had an official responsibility to cooperate with the investigation Stacks was conducting into the UCAPD's response to the Hughes Hall incident. His allegations of intoxication against James were made at no other time than during this investigation, and thus his speech was pursuant to his official and professional duties. We affirm.

_____

_____

[2] If the answer is yes, the possibility of a First Amendment claim arises. The question next becomes whether the government employer had an adequate justification for treating the employee differently from any other member of the general public. Pickering, 391 U.S. at 568. As we answer the first Pickering question in the negative under Garcetti, we need not address this second question.